**[J-67-2016] [OAJC: Donohue, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| POCONO MOUNTAIN SCHOOL DISTRICT, | : | No. 87 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the |
| Appellant | : | Commonwealth Court dated July 8, |
| | : | 2015, at No. 2052 CD 2014 Affirming |
| | : | the Order of the Pennsylvania |
| v. | : | Department of Education dated October |
| | : | 23, 2014 at No. EDU-2014-SLAP- |
| | : | 000176. |
| PENNSYLVANIA DEPARTMENT OF | : | |
| EDUCATION, DIVISION OF SUBSIDY | : | |
| DATA AND ADMINISTRATION, | : | |
| | : | |
| Appellee | : | ARGUED:  May 11, 2016 |

**DISSENTING OPINION**

**JUSTICE BAER**                                          **DECIDED:  December 28, 2016**

I respectfully dissent on two grounds.  First, regardless of the wisdom of such legislative pronouncement, I interpret the plain language of Section 8327(b)(2) of the Retirement Code, 24 Pa.C.S. § 8327(b)(2), as requiring the Department of Education to withhold from the chartering school district's appropriation an amount equal to the charter school's contributions to the Public School Employees Retirement System ("PSERS") that remain unpaid as of the date the appropriation would be paid to the chartering school district.[1]  Contrary to the reasoning of the Opinion Announcing the Judgement of the Court ("OAJC"), I do not view the revocation of the charter school's charter prior to the withholding of funds as altering the legal analysis because the

_____

[1] The text of this section is set forth in its entirety <u>infra</u>, at 2-3.

"chartering school district" is the public school district that granted the charter, and that status is not negated when the charter is subsequently revoked.

Second, I disagree with the OAJC that Section 8327(b) of the Retirement Code and Section 17-1729-A(i) of the Charter School Law ("CSL") address the same subject and must be read in *pari materia* to conclude that a school district is not liable for its charter school's unpaid PSERS contributions.[2]  As explained infra, I find Section 17-1729-A, entitled "Causes for nonrenewal or termination [of a charter]," to be inapplicable as liability for unpaid PSERS's contributions does not arise from the closing of a charter school, but rather from operating the school in the chartering school district during the school year in which the charter was in effect.  While I acknowledge the hardship that the withholding of funds places upon school districts in this Commonwealth, I nevertheless find that the unambiguous statutory language mandates our affirmance of the Commonwealth Court's decision, which upheld the Department of Education's deduction from the subsidy of the Pocono Mountain School District ("School District").

Expounding upon my first concern, I reiterate that Section 8327 of the Retirement Code, entitled "Payments by employers" addresses payments to the Public School Employees' Retirement Fund ("Fund").  Subsection (2) of Section 8327(b), entitled "Deductions from appropriations," is dispositive and provides, in its entirety, as follows:

> To facilitate the payments of amounts due from any charter school, as defined in Article XVII-A of the act of March 10, 1949 (P.L.30, No.14), known as the Public School Code of 1949, to the fund through the State Treasurer and to permit the exchange of credits between the State Treasurer and any employer, the Secretary of Education and the State Treasurer shall cause to be deducted and paid into the fund from any funds appropriated to the Department of Education for basic education of

_____

[2] Section 17-1729-A(i) is set forth in full infra, at 5.

the chartering school district of a charter school and public school employees' retirement contributions amounts equal to the employer and pickup contributions which a charter school is required to pay to the fund, as certified by the board, and as remains unpaid on the date such appropriations would otherwise be paid to the chartering school district or charter school. Such amounts shall be credited to the appropriate accounts in the fund. Any reduction in payments to a chartering school district made pursuant to this section shall be deducted from the amount due to the charter school district pursuant to the Public School Code of 1949.

24 Pa.C.S. § 8327(b)(2).

The OAJC likewise finds this language unambiguous, but reaches the opposite conclusion. It relies, *inter alia*, upon the sentence directing the withholding of PSERS contribution amounts that are "unpaid on the date such appropriations would otherwise be paid to the chartering school district or charter school." See Slip Op. at 20-21 (citing 24 Pa.C.S. § 8327(b)(2)). The OAJC reasons that because a charter school ceases to exist upon revocation of its charter, no appropriations "would otherwise be paid" to the charter school after the school has closed. Id. at 21. Further, it proffers, absent a charter, the charter school has no "chartering school district." Id. In a similar vein, the OAJC reasons that the operative date under the statute is when appropriations would be paid, thus, whether a school district is the chartering district under Section 8327(b)(2) must be determined at the time the funds are withheld, which occurred after the charter was revoked. Id. at n.13.

I respectfully disagree. The School District is the "chartering school district" of the Pocono Mountain Charter School ("Charter School") pursuant to Section 8327(b)(2) because it authorized the charter and the PSERS contributions were due for a period during which the Charter School was operating under that charter. See West Chester Area Sch. Dist. v. Collegium Charter Sch., 812 A.2d 1172, 1183 (Pa. 2002) (describing "chartering school district" as the district that authorized the charter, as opposed to the

other school districts who did not authorize the charter, but, nevertheless, have a financial obligation to the charter school because their students attend the charter school). The subsequent revocation of the charter has no bearing on the issue as Section 8327(b)(2) does not direct a deduction only where there is a finding that the charter school currently remains in existence. Thus, the revocation of the charter in June of 2014, prior to when the deduction was made in August of 2014, is inconsequential for purposes of applying Section 8327(b).[3]

Although I agree with the OAJC's categorization that "[t]he operative date of Section 8327(b)(2) is the date the appropriations would be paid to the school district, not the date of the missed PSERS payments," Slip Op. at 21 n.13, I find that the "operative date" clause of the statute modifies the "amount" to be deducted, and not the "entity" from which the funds are withheld. The statutory language directs that the amount to be deducted is the amount of unpaid PSERS contributions existing on the date the appropriation would otherwise be paid to the charting school district. The entity subject to the deduction is clearly the "chartering school district." The statute requires only that the Retirement Board certify to the Department that the charter school failed to make required payments to the Fund and was determined to be delinquent, and the Department must then deduct the amount due from the subsidy of the chartering school

---

[3] Based on its conclusion that Section 17-1729-A(i) prohibits the deduction in this case, the OAJC does not address the School District's contention that Section 8327(b)(2) only permits the deduction of funds from the chartering school district if such amount can be recouped from the charter school. Slip Op. at 22 n.14. As I would conclude that Section 17-1729-A(i) is inapplicable, I would reach the School District's contention in this regard and reject it. While it may be good policy to do so, Section 8327(b) does not in any way condition the subsidy intercept on whether the amount due to be paid from the chartering school district's subsidy can be recovered by the school district through its own withholding of payments from the charter school. The last sentence of Section 8327(b)(2) permits recoupment, but does not make it a prerequisite to the deduction of funds from the chartering school district's basic education subsidy.

district and pay the Fund. As the Commonwealth Court below held, "[n]owhere in the language of Section 8327 does it explicitly or implicitly indicate that a chartering school district is cleared from having to pay a deficient payment if the charter school ceases to operate as one." Pocono Mountain Sch. Dist. v. Pa. Dep't of Educ., 2052 C.D. 2014, 2015 WL 5457139, at *3 (Pa. Cmwlth. July 8, 2015) (unpublished memorandum).

Regarding my second point of dissension, I do not believe that Section 17-1729-A(i) of the CSL and Section 8327(b)(2) address the same subject as the former sets forth a payment mechanism for PSERS contributions, while the latter addresses the closure of charter schools. Thus, I respectfully dispute the OAJC's assertion that the two statutes should be read in *pari materia* to preclude the deduction in this case.

Section 17-1729-A, entitled "Causes for nonrenewal or termination," states at subsection (i):

> When a charter is revoked, not renewed, forfeited, surrendered or otherwise ceases to operate, the charter school shall be dissolved. After the disposition of any liabilities and obligations of the charter school, any remaining assets of the charter school, both real and personal, shall be distributed on a proportional basis to the school entities with students enrolled in the charter school for the last full or partial school year of the charter school. In no event shall such school entities or the Commonwealth be liable for any outstanding liabilities or obligations of the charter school.

24 P.S. § 17-1729-A(i).

The OAJC emphasizes the last sentence of Section 17-1729-A(i), providing that school entities are not liable for outstanding obligations of the charter school, while discounting the context of the provision as a whole, which speaks to the closure of a charter school and the school district's resultant obligations or lack thereof. While this provision of the CSL was enacted later in time than Section 8327(b) of the Retirement Code, I am unpersuaded that the General Assembly intended for Section 17-1729-A(i)

to restrict application of the PSERS payment mechanism set forth in Section 8327(b)(2). Had the legislature possessed such intent, it likely would have achieved such goal by amending the Retirement Code, which governs PSERS payments, rather than adding a sentence to a provision of the CSL dealing with charter school closings. In other words, when the General Assembly enacted Section 17-1729-A(i), it did not provide any explicit or implicit intention that it should prevail over Section 8327(b)(2). Here, because the unpaid PSERS payments did not arise from the closing of the Charter School, but rather from its operation during a period of time when the charter was in effect, I would not apply Section 17-1729-A(i) to the facts presented.

To the extent there is a conflict between Section 17-1729-A(i) of the CSL and Section 8327(b) of the Retirement Code, I would find that the specific provision directing deductions from chartering school district's subsidies for unpaid PSERS contributions controls over the general provision absolving school districts of liability for charter school obligations. See 1 Pa.C.S. § 1933 ("Particular controls general") (providing that "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.").

Accordingly, I conclude that the Commonwealth Court correctly interpreted the plain language of Section 8327(b)(2) and upheld the Department of Education's deduction from the Charter School's subsidy.

Justice Dougherty joins.